2022 IL App (1st) 200872

FIFTH DIVISION
FEBRUARY 4, 2022

No. 1-20-0872

| | | |
|---|---|---|
| QUAD CAPITAL PORTFOLIO A LLC, and QUAD SECURITIES PORTFOLIO A LLC, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) | |
| v. | ) | No. 18 L 10431 |
| | ) | |
| ABBVIE, INC., | ) | Honorable |
| | ) | Margaret A. Brennan, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Connors concurred in the judgment and opinion.

## OPINION

¶ 1 The plaintiffs-appellants, Quad Capital Portfolio A LLC and Quad Securities Portfolio A LLC (the Quad investors), brought a complaint against the defendant-appellee, AbbVie, Inc. (AbbVie), in the circuit court of Cook County. The circuit court granted summary judgment in favor of AbbVie on the basis that the complaint was time-barred by the statute of limitations, and the Quad investors now appeal. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3 AbbVie is a Delaware-incorporated pharmaceutical company with its principal place of business in North Chicago, Illinois. On June 20, 2014, AbbVie announced that it had approached

another pharmaceutical company, Shire PLC (Shire), with an acquisition proposal.[1] Shire is organized under the laws of the island of Jersey, a self-governing dependency of the United Kingdom, and headquartered in Ireland. AbbVie disclosed that, as part of its acquisition proposal with Shire, AbbVie would reincorporate as a foreign company outside of the United States and create a tax inversion, which would significantly reduce the amount it paid in taxes in the United States.

¶ 4    On July 18, 2014, AbbVie and Shire announced they had reached agreed terms and signed a merger agreement. The merger agreement provided that AbbVie would merge with Shire, with AbbVie as the surviving entity reincorporating in Jersey. The merger agreement projected a new, lower tax rate for the newly merged entity as a consequence of reincorporation under the laws of Jersey.

¶ 5    That same day, AbbVie's CEO, Richard Gonzalez, held an investor conference call to discuss the merger agreement. During the conference call, investment analysts asked Mr. Gonzalez about the emerging political debate in the United States surrounding tax inversions and the risk of United States government action to eliminate or restrict tax inversion benefits. Mr. Gonzalez answered that AbbVie had "studied this transaction very, very carefully" and believed it was "highly executable." He stated that the tax inversion was an additional benefit but "not the primary rationale" for the merger agreement.

¶ 6    The Quad investors are hedge funds based in Delaware that make monetary investments through merger arbitrage strategies. In July 2014, the Quad investors purchased Shire American depository receipts (ADRs)[2] based upon the merger agreement. By October 14, 2014, the Quad

---

[1]Shire is not a party to this appeal.
[2]ADRs are negotiable certificates representing ownership in publicly traded foreign corporations. *Cohan v. Citicorp*, 266 Ill. App. 3d 626, 627 (1993).

investors had acquired approximately $22.5 million in Shire ADRs.

¶ 7    On September 22, 2014, while the merger agreement was pending, the United States Treasury Department announced new federal tax regulations that would limit certain benefits of tax inversions and diminish the ability of inverted companies to pay a lower tax rate to the United States (the treasury notice).

¶ 8    On September 29, 2014, Mr. Gonzalez issued a letter to all Shire employees, which AbbVie publicized to investors and filed with the United States Securities and Exchange Commission. The Shire letter stated that AbbVie was still moving forward with the merger agreement and that Mr. Gonzalez was "more energized than ever" and "confident" about the merger. AbbVie also published a letter to its own employees stating that it was aiming for a fourth-quarter closing of the merger agreement.

¶ 9    On October 14, 2014, AbbVie announced that it was reconsidering the merger agreement, due, in part, to the September 22, 2014, treasury notice. On October 15, 2014, AbbVie confirmed that it was terminating the merger agreement. AbbVie's announcement stated:

> "Although the strategic rationale of combining our two companies remains strong, the agreed upon valuation is no longer supported as a result of the changes to the tax rules and we did not believe it was in the best interests of our stockholders to proceed."

Following AbbVie's announcement that it was not moving forward with the merger agreement, Shire's ADRs fell 30% in value in one day.

¶ 10    In light of AbbVie terminating the merger agreement, the Quad investors began selling their Shire ADRs. The record reflects that the Quad investors sold all their Shire ADRs in October 2014.

¶ 11     On September 16, 2018, the Quad investors filed their complaint against AbbVie in the circuit court of Cook County, alleging fraudulent misrepresentation and fraudulent concealment regarding the merger agreement. Specifically, the complaint alleged that AbbVie fraudulently induced the Quad investors to purchase Shire ADRs through several statements it made in June and July 2014 that the merger agreement was not based on the tax inversion benefits. The Quad investors claimed that those statements were "false and misleading." The complaint stated:

> "By making such misrepresentations, AbbVie intended to induce, and did induce, Shire investors to believe that AbbVie's support for the Shire transaction was not contingent on the absence of government restrictions on tax inversions because AbbVie had concluded that the deal was strategically and financially compelling beyond the tax impact and, in turn, to maintain its existing shares and/or acquire additional shares in Shire."

The Quad investors alleged that they relied upon AbbVie's statements in deciding to purchase Shire ADRs in July 2014.[3] The complaint further claimed that AbbVie had concealed from its investors, including the Quad investors, that it "had not conducted an evaluation as to whether it would close the [merger agreement] in the event government action eliminated or reduced the tax-inversion benefits of the deal." The Quad investors alleged that, pursuant to the Securities Exchange Act of 1934 and associated federal regulations, AbbVie had a duty to disclose only truthful statements concerning the merger agreement. According to the complaint, had AbbVie been "truthful" about the tax inversion aspect of the merger agreement, the Quad investors would

---

[3]The complaint alleged that AbbVie's statements induced it to purchase *additional* Shire ADRs in July 2014, indicating that the Quad investors already acquired some Shire ADRs before July 2014. The Quad investors' purchase of Shire ADRs in July 2014 is the purchase at issue in this appeal.

not have acquired their Shire ADRs in July 2014 and subsequently lose millions of dollars.[4]

¶ 12    The Quad investors' action was consolidated with numerous other actions against AbbVie regarding the termination of the merger agreement.[5] In November 2018, AbbVie answered the Quad investors' complaint and produced discovery.

¶ 13    On April 3, 2020, AbbVie filed a motion for summary judgment. AbbVie's motion for summary judgment argued that the Quad investors' action was time-barred by the three-year statute of limitations pursuant to the Illinois Securities Law of 1953 (Illinois Securities Law) (815 ILCS 5/13(D) (West 2018)). Because the Quad investors' claims were purchaser claims, AbbVie argued that they were required to bring those claims within three years of selling their Shire ADRs, which occurred in October 2014. As the Quad investors did not file their complaint until September 2018, nearly four years later, AbbVie argued that the complaint was time-barred and so the trial court should grant summary judgment in its favor on that basis.

¶ 14    The Quad investors filed an opposition to summary judgment. They agreed that the three-year statute of limitations applied to their case but argued that their purchaser claims were nonetheless timely pursuant to the discovery rule of the Illinois Securities Law, which tolls the statute of limitations until the party has knowledge of the fraud upon which the purchaser claims are based. *Id.* The Quad investors argued that they did not have knowledge of AbbVie's fraudulent statements concerning the merger agreement until another party, Elliott Management, filed an action against AbbVie in June 2016. The Quad investors asserted:

---

[4]The complaint also alleged that AbbVie had fraudulently induced the Quad investors to *hold* onto their Shire ADRs, *i.e.*, holder claims. However, in a related case against AbbVie, this court recently affirmed that Illinois does not recognize holder claims. *Castlerigg Master Investments, Ltd. v. AbbVie, Inc.*, 2021 IL App (1st) 200527, ¶¶ 21-24. As the instant case was stayed pending the outcome of that case, the Quad investors do not raise the issue of their holder claims on appeal.

[5]Although this case was consolidated with others in the trial court and the trial court ultimately ruled upon the Quad investors' action and another party's action at the same time, the Quad investors are the only appellants in this appeal.

"Here, it was not until the Elliott plaintiffs filed their complaint in June 2016, which set forth in exhaustive detail facts clearly demonstrating AbbVie's fraud, as well as AbbVie's intent to induce investors' reliance on that fraud, that [the Quad investors] had 'notice of facts which in the exercise of reasonable diligence would lead to actual knowledge' of the fraud."

Accordingly, the Quad investors claimed that the statute of limitations did not begin to run until June 2016, and so their September 2018 complaint was timely.

¶ 15    On July 16, 2020, the trial court heard arguments on the motion for summary judgment. After arguments, the trial court found that the statute of limitations barred the Quad investors' complaint because more than three years had passed since they sold their Shire ADRs. The trial court stated:

"As to the purchaser claim, what has been put forth as part of this record [ ] shows that the purchase and sale of these securities was done in excess of three years before the filing of *** [the Quad investors'] claims, and, therefore, summary judgment will be granted in favor of AbbVie."

The trial court further rejected the argument that there was a question of fact as to when the Quad investors could have discovered AbbVie's alleged fraud, pointing to the pleadings in the complaint in support of its ruling. The trial court held that the statute of limitations had not been tolled and so the Quad investors' complaint was untimely. It granted summary judgment in favor of AbbVie on that basis and dismissed the case with prejudice. The Quad investors then appealed.

¶ 16                                    ANALYSIS

¶ 17    We note that we have jurisdiction to consider this matter, as the Quad investors filed a timely notice of appeal. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 18    The Quad investors present the following issue: whether the trial court erred in granting summary judgment in favor of AbbVie. The Quad investors argue that there is a material question of fact as to whether they had knowledge of AbbVie's alleged fraud when they sold their Shire ADRs in October 2014 and, therefore, whether the statute of limitations was tolled. They claim that the record "is bereft of evidence" that the Quad investors "actually knew that AbbVie had knowingly misled investors" regarding the merger agreement prior to June 2016, when Elliott Management filed its complaint against AbbVie. According to the Quad investors, they knew of their injury and that a lawsuit against AbbVie was an "option" when they sold their Shire ADRs in October 2014, but that is a "vast difference" from having knowledge that AbbVie had acted wrongfully. The Quad investors argue that, until Elliott Management filed its complaint against AbbVie in June 2016, they did not have notice of the precise facts or possess sufficient information to realize that a fraud lawsuit against AbbVie was viable. They aver that, even had they exercised due diligence, it still would not have led to actual notice of AbbVie's alleged fraud prior to Elliott Management filing its complaint. They argue that the trial court erred in granting summary judgment in favor of AbbVie and ask this court to reverse that judgment and remand this case for further proceedings.

¶ 19    The purpose of summary judgment is to determine if a material question of fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Adams*, 211 Ill. 2d at 43. "Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should

be allowed only where the right of the moving party is clear and free from doubt." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19. We review appeals from summary judgment rulings *de novo*. *Id.*

¶ 20    Summary judgment was granted in this matter on the basis that the Quad investors' complaint was time-barred by the statute of limitations. The parties do not dispute that the Quad investors' purchaser claims at issue are governed by section 13 of the Illinois Securities Law (815 ILCS 5/13 (West 2018)). It provides, in relevant part:

> "No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale; provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of subsection E, F, G, H, I or J of Section 12 of this Act which is the basis for the action, the 3 year period provided herein shall begin to run upon the earlier of:
>
> > (1) the date upon which the party bringing the action has actual knowledge of the alleged violation of this Act; or
> >
> > (2) the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act." *Id.* § 13(D).

Accordingly, the Quad investors were required to bring their purchaser claims against AbbVie within three years of selling their Shire ADRs unless the Quad investors did not know about AbbVie's alleged fraudulent activity or could not have known about it with the exercise of reasonable diligence. In that event, the three-year statute of limitations period would begin to run from the date of the Quad investors' acquisition of such knowledge. It is undisputed that the Quad

investors sold their Shire ADRs in October 2014, which would normally trigger the three-year statute of limitations. So, the question before us is whether the Quad investors lacked knowledge of AbbVie's fraud or lacked notice of facts that would have led them to discover AbbVie's fraud, through reasonable diligence, when they sold their Shire ADRs in October 2014. If the answer to that question is yes, then the statute of limitations was tolled.

¶ 21 Both parties direct us to news reports and other related cases against AbbVie regarding the merger agreement and its termination. However, our analysis focuses on the Quad investors' complaint itself. In their complaint, the Quad investors alleged that AbbVie made statements in June and July 2014 that it was not merging with Shire because of the tax inversion benefits, which had induced the Quad investors to purchase Shire ADRs. The complaint further alleged that, however, once the treasury notice was issued, causing the possible merger to lose some tax inversion benefits, AbbVie terminated the merger agreement in October 2014, much to the Quad investors' surprise. The Quad investors' complaint stated that this established the June and July 2014 statements made by AbbVie to be "misrepresentations." Specifically, the Quad investors alleged:

> "On October 15, 2014, AbbVie issued a press release announcing that its Board had withdrawn its July recommendation to AbbVie stockholders in favor of the proposed transaction with Shire. *** *AbbVie said that its Board made this determination following its consideration of the impact of the U.S. Department of the Treasury's changes to the tax regulations issued on September 22, 2014, attributing its decision to abandon the acquisition solely to reductions in the tax-inversion benefit.* *** AbbVie said that it was abandoning the deal even though 'the strategic rationale of combining our two companies remains strong.'

*AbbVie's statements and actions on October 14 and 15, 2014 are factually inconsistent with AbbVie's statements* that: (i) 'The proposed combination is strategically compelling to AbbVie and Shire' (June 25, 2014); (ii) the transaction had a 'compelling financial impact well beyond the tax impact' (July 18, 2014); (iii) AbbVie had 'studied this transaction very, very carefully' and had concluded that the deal was 'highly executable' despite the potential for government action against tax inversions (July 18, 2014); and (iv) 'I'm more energized than ever about our two companies coming together, especially because I can already see many shared traits and values in the people at AbbVie and Shire' and 'I'm more confident than ever about the potential of our combined organizations now that I've had a chance to meet with many of you' (September 29, 2014). *AbbVie's statements and actions on October 14 and 15, 2014 demonstrate that the foregoing statements were false and misleading when made.*" (Emphases added.)

Based on these allegations, it cannot be said that the Quad investors lacked knowledge of AbbVie's alleged fraud when they sold their Shire ADRs in October 2014.

¶ 22 In simple terms, the Quad investors accused AbbVie of misrepresenting the status of the merger agreement by not disclosing, in June and July 2014, that the merger agreement might be terminated if the tax inversion benefits were diminished. Then they alleged that the merger agreement was ultimately terminated by AbbVie in October 2014 because of the treasury notice, *demonstrating that the statements AbbVie made in June and July 2014 about the tax inversion benefits were misrepresentations*. That very language establishes that, when the Quad investors sold their shares in October 2014, they knew or should have known that AbbVie had committed the alleged fraud. No other conclusion can be drawn from the Quad investors' complaint, in which

they explicitly admit they were surprised when the merger agreement was terminated in October 2014 due to the treasury notice, as AbbVie had been making reassurances that the treasury notice would not affect the merger agreement. "Generally, the questions of the timeliness of plaintiffs' complaint and the time [at which] the statute of limitations begins to run are questions of fact, but they may become questions of law if the crucial facts are undisputed and only one conclusion can be drawn from the undisputed facts." *Jones v. Dettro*, 308 Ill. App. 3d 494, 498 (1999). This is especially true considering that the Quad investors did not allege any additional facts to explain why they did not possess the relevant knowledge at that time. See *id.* (plaintiffs have the burden of proving the existence of facts that would call into play a rule tolling the period of limitation). These are sophisticated investors engaged in the business of financial investments, arbitrage mergers, and similar transactions. Yet, they claim to lack any knowledge that the stated reason for the termination of the AbbVie Shire merger was a misrepresentation that would later lead them to sue AbbVie.

¶ 23     The Quad investors aver on appeal that their injury of losing millions of dollars in October 2014 cannot be conflated with knowledge of AbbVie's fraud at that time. However, finding that the Quad investors had knowledge of AbbVie's alleged fraud in October 2014 under these facts and circumstances does not conflate their injury with the knowledge that the injury was wrongfully caused. Indeed, it would be nonsensical to accept the Quad investors' allegations that they were surprised that the merger agreement was terminated in October 2014 due to the treasury notice, which rendered AbbVie's June and July 2014 statements about the tax inversion to be misrepresentations, and then simultaneously find that they could not have known that those statements were misrepresentations. See *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 13 (when a party knew or reasonably should have known its injury was wrongfully

caused raises a question of fact, *unless only one conclusion can be drawn at some particular point from undisputed facts*). Based on their own pleadings, we find that the statute of limitations was not tolled by the Quad investors' alleged lack of knowledge as to AbbVie's alleged fraud.

¶ 24 Thus, there is no genuine issue of fact that the three-year statute of limitations began to run in October 2014 when the Quad investors sold their Shire ADRs, rendering their September 2018 complaint untimely. See 815 ILCS 5/13(D) (West 2018) (no action shall be brought for relief after three years from the date of sale). Therefore, the trial court properly granted summary judgment in favor of AbbVie on those grounds, and we accordingly affirm the trial court's judgment. See *Duniver v. Clark Material Handling Co.*, 2021 IL App (1st) 200818, ¶ 12 (summary judgment is appropriate if no material fact is in dispute and if reasonable persons could not draw differing inferences from the undisputed material facts).

¶ 25                              CONCLUSION

¶ 26 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27 Affirmed.

## No. 1-20-0872

| | |
|---|---|
| **Cite as:** | *Quad Capital Portfolio A LLC v. AbbVie, Inc.*, 2022 IL App (1st) 200872 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-10431; the Hon. Margaret A. Brennan, Judge, presiding. |
| **Attorneys for Appellant:** | Frank B. Castiglione and Paul A. Castiglione, of Khowaja Law Firm, of Chicago, Brian P. Murray, of Glancy Prongay & Murray LLP, of New York, New York, and Garth Spencer, of Glancy Prongay & Murray LLP, of Los Angeles, California, for appellants. |
| **Attorneys for Appellee:** | James F. Hurst, Andrew A. Kassof, Gabor Balassa, and Whitney L. Becker, of Kirkland & Ellis LLP, and Tarek Ismail, Alan Littmann, Andrew Rima, and Betsy Farrington, of Goldman Ismail Tomaselli Brennan & Baum LLP, both of Chicago, for appellee. |