2023 IL App (1st) 220945-U

SECOND DIVISION
June 20, 2023

No. 1-22-0945

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF ) | Appeal from the Circuit |
| THE COUNTY TREASURER AND EX OFFICIO ) | Court of Cook County. |
| COUNTY COLLECTOR OF COOK COUNTY, ) | |
| ILLINOIS, FOR ORDER OF JUDGMENT AND ) | |
| SALE AGAINST REAL ESTATE RETURNED ) | |
| DELINQUENT FOR THE NON-PAYMENT OF ) | |
| GENERAL TAXES FOR THE YEAR 2016 AND ) | |
| PRIOR YEARS ) | |
| ) | |
| PETITION OF DISCOVERY INVESTMENTS ) | |
| AND ACQUISITIONS, LLC FOR TAX DEED, ) | |
| ) | |
| Petitioner-Appellee, ) | |
| ) | |
| v. ) | No. 19 COTD 0895 |
| ) | |
| 6143 HOWARD MANAGER, LLC, ) | |
| NORTH SHORE RIFLE & RANGE, ) | |
| ADAM FIRSEL, ) | |
| MYLES P. CUNNINGHAM, JR., ) | |
| CHAD M. FIRSEL, ) | |
| 6143 HOWARD INVESTMENTS, LLC, ) | Honorable |
| ) | Patrick T. Stanton |
| Intervenors-Appellants. ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County granting summary judgment in favor of the purchaser of a tax deed; the tax-deed purchaser strictly complied

with all of the notice requirements of the Property Tax Code and paid all delinquent taxes due and payable prior to the order for the issuance of a tax deed.

¶ 2    The owner of tax property which was sold for delinquent taxes filed a motion to vacate the trial court's order issuing a tax deed. The motion alleged the failure of the tax purchaser to serve statutorily required notices on the individual managers of an LLC that manages the LLC that owns property. The motion also alleged the order for deed should be vacated for failure of the tax purchaser to pay all subsequently accruing taxes before issuance of a tax deed. The motion was denied and the owner timely appealed. For the following reasons, we find the tax purchaser complied with all requirements entitling it to a tax deed and affirm the order of the trial court denying the motion to vacate the order issuing a tax deed.

¶ 3                                    BACKGROUND

¶ 4    In April 2019, Scribe Funding LLC (Scribe) filed a Petition for Tax Deed to commercial real estate located at 6143 Howard Street in Niles, Illinois. The record owners of the property, 6143 Howard Venture, LLC (Venture), purchased the property in November 2014. Venture was in turn managed by another LLC, 6143 Venture Management, LLC (Venture Management). The petition for tax deed averred that Scribe (petitioner) purchased the real estate taxes for the subject property at the annual tax sale held on May 4, 2018, and that petitioner obtained a Certificate of Purchase.

¶ 5    The petition further averred that the real estate had not been redeemed from the sale and the time for redemption would expire by extension on October 17, 2019. Petitioner averred that "[a]ll taxes and special assessments which become due and payable on said parcel of real estate subsequent to the date of said sale and prior to and including the date of filing this petition will be redeemed" and that prior to the entry of an order directing the County Clerk to issue a tax deed, "all other taxes and special assessments falling due on said parcel of real estate between

the date of filing this petition and the date of said order, if any, will be paid." Finally, in pertinent part, the petition averred that "[a]ll notices required by law to be given prior to the entry of an order directing the issuance of a tax deed on said parcels [*sic*] of real estate and due proof will be made of the giving of such notice."

¶ 6     It is not disputed that the tax purchaser caused the registered agent of Venture, which is also the registered agent of Venture Management, to be served with the notices required by the Tax Code within the time required by law. According to a certification in the record, on May 2, 2019, the Clerk of the Circuit Court of Cook County mailed a Take Notice to, among others, Venture, Myles Cunningham, and James Oraha. The Take Notice stated the subject property had been sold for general taxes of year 2016 with 2015 included, that the period of redemption would expire on October 17, 2019, that a petition had been filed to issue a tax deed, and that the matter was set for hearing in the circuit court on October 23, 2019. The record also contains a certified mail receipt for delivery of the Take Notice on May 7, 2019 to the registered agent for Venture signed by L. Sanchez and a certified mail receipt signed by Adam Firsel on May 16, 2019, as agent for Venture. The certified mail receipts for James Oraha, Myles Cunningham, and Venture Management are marked "Return to Sender. Unclaimed." The record contains both a certified mail receipt signed for delivery to Venture and receipts stamped "Return to Sender. Unclaimed." for delivery to Venture. (The signed receipt is not dated.)

¶ 7     The record also contains Affidavits of Service by the Cook County Sheriff. The Cook County Sheriff averred it served Venture by certified mail on April 29, 2019 and by corporate service on James Oraha on May 23, 2019. The Cook County Sheriff averred that it served Myles Cunningham by corporate service on James Oraha on May 23, 2019. The Sheriff similarly averred it served Oraha by corporate service, but that process was served on James Oraha.

¶ 8     On October 22, 2019, Scribe filed an Application For An Order Directing The County Clerk to Issue a Tax Deed. The application stated, in pertinent part, as follows:

"The parties who are or may be owners, occupants, and parties interested in the subject property are as follows:

Occupant – [Venture,] *** Myles Cunningham; James Oraha; ***."

Scribe's Application also stated that the Sherriff's return of service indicated that the Sheriff served the notice required by section 22-10 of the Property Tax Code on Venture by accepted certified mail and by corporate service on James Oraha, served Myles Cunningham by corporate service on James Oraha, and served James Oraha by corporate service on Oraha. The application stated the Clerk's notice required by section 22-25 of the Property Tax Code was placed with the Clerk of the Circuit Court of Cook County and mailed on May 2, 2019, and that publication notice was published. Finally, in pertinent part, the application stated that general taxes arising subsequent to the tax sale of the property were 2017 and 2018 and would be paid prior to entry of the order requested by the application.

¶ 9     On February 19, 2020, Scribe filed a Motion for Substitution of Parties. The motion sought to substitute Discovery Investments and Acquisitions, LLC (DIA) as the new tax deed petitioner. The motion stated that Scribe assigned the Certificate of Purchase to DIA. The same day, the trial court granted the motion to substitute. (Given the nature of the relationship hereinafter we will refer to Scribe and DIA individually and collectively as "Tax Purchaser.") Also on February 19, 2020, the trial court entered an Order Directing Issuance of Tax Deed to Tax Purchaser. The order specifically found, in pertinent part, that "the Tax Sale Notice *** was served in the manner and within the time required by the Property Tax Code" and that "all persons entitled thereto have had due notice of the filing and the time of hearing upon this

Petition." The order also found that "all general taxes and special assessments that became due and payable subsequent to said sale have been paid."

¶ 10    On March 17, 2020, Venture filed a petition pursuant to section 2-1203 of the Code of Civil Procedure to vacate the February 19, 2020 order directing the issuance of a tax deed. Also on March 17, 2020, Adam, Myles, Chad, Investments, and Venture Management filed a motion for leave to intervene, which was granted. (Collectively, "appellants.")

¶ 11    The motion to intervene alleged that Venture, doing business under the assumed name of NSRR (North Shore Range and Rifle), owned the property, and that its manager was Venture Management. (The motion also suggests that Venture Management operated under the assumed name NSRR.)

¶ 12    The motion to vacate alleged, in pertinent part, that Venture was doing business under the name NSRR, that Venture Management was its manager, and that certain individuals and another business entity, Venture Investments, were member-managers of Venture Management. Venture Management was the sole manager of Venture. Venture Management, in turn, listed five managers that included four persons and one entity. Venture Management's own managers were Adam Firsel, Myles P. Cunningham, Jr., James Oraha, Chad M. Firsel, and the entity Venture Investments.

¶ 13    The motion to vacate alleged Tax Purchaser failed to serve Venture Management as an interested party and failed to serve Myles Cunningham, Chad Firsel, or Venture Investments, "all of whom are interested parties and investors in the property." The petition to vacate further alleged that the 2019 taxes remain "delinquent" as of the date of filing. The petition to vacate alleged that Tax Purchaser failed to serve Cunningham in his capacity as a member-manager of Venture Management. The petition contains the following pertinent allegations:

"22.    Minimal inspection of the public records readily revealed that

Myles P. Cunningham, Jr. is a member manager of [Venture Management].

* * *

24.    Although DIA was aware that [Venture Management] has five

member managers, DIA failed to send notice to some [of Venture Management's]

member managers, and fraudulently represented it served the other member

managers.

25.    'Myles P. Cunningham, Jr.' was clearly listed as one of the five

member managers for [Venture Management] and unconditionally an interested

party in the property."

¶ 14    Appellants' motion to vacate also alleged Tax Purchaser failed to serve NSRR, Venture

Investments, Adam Firsel, Chad Firsel, or Venture Management. Separately, the motion to

vacate alleged Tax Purchaser failed to serve the occupant in possession of the property which it

alleged to be NSRR and Venture Investments. Finally, the motion to vacate alleged that Tax

Purchaser failed to pay the first installment of the 2019 taxes on the property before issuance of a

tax deed in violation of section 22-40 of the Property Tax Code.

¶ 15    On June 4, 2020, Tax Purchaser filed a response to the motion to vacate and Motion for

Summary Judgment. On July 6, 2020, appellants filed a cross-motion for summary judgment.

The trial court summarized the arguments as follows:

"In essence, the motion to vacate claims that contrary to my findings,

DIA—or more specifically its predecessor in interest, as tax purchaser—did not

comply with the notice-serving requirements of the Property Tax Code because

certain entities and persons claiming an interest in the property were not named and served.

Specifically, movants claim that DIA was required to name and provide notice to the manager of Venture, [Venture Management,] and each of the manager's member managers: Myles Cunningham, Jr.; Chad Firsel; Adam Firsel; and [Venture Investments.]

[M]ovants claim that DIA was required to name and serve [Venture Investments'] registered agent, United Corporate Services, Inc.

[T]he motion also claims that the order should be vacated because the petitioner failed to pay all the property taxes that were due and payable at the time the Court issued its order on February 19th, 2020."

¶ 16 The trial court granted Tax Purchaser's motion for summary judgment in part and denied it in part, and denied appellants' cross-motion for summary judgment. The trial court denied Tax Purchaser's motion for summary judgment regarding the failure to serve Venture Investments on the ground the evidence was inconclusive. The court stated, "I can't, at this time, find that they were a necessary party for notice, but I also can't find that they weren't." The trial court also found that it did not believe "that a member-manager of a manager of an entity that owns a property sold is an interested party and must be served with notice under the Property Tax Code." The court relied on the fact "the LLC Act is clear that service of *** any required notice be made on the registered agent of the LLC." The court continued: "Even if one were to consider a manager of a property owner *** as an interested party, which it is not, one would not be compelled to serve each of the *** member managers. *** Instead the LLC Act would say that

you'd have to serve the registered agent of that manager." In this case the registered agent of Venture Management was served.

¶ 17     The trial court found that there was a question of fact "as to whether Mr. Cunningham was an interested party in this property separate from his interest as a member-manager of Manager." The court found "some evidence that Mr. Cunningham was somehow served with and cited with a fine separate, I don't have enough information about it to make a determination at this point whether or not he has an interest in the property separate from his interest as a member manager." Conversely, the court found "their role as alleged *** as *** member managers of [Venture Management, which manages Venture] is insufficient for me to find them as interested parties."

¶ 18     In sum, the trial court denied the motion for summary judgment and cross-motion for summary judgment with regard to Cunningham "because *** there is a question of fact as to, one, whether or not he is interested party [*sic*] separate from his interest—solely from his interest as a member-manager of [Venture Management] and two, whether or not whatever interest it is that Mr. Cunningham may have had separate from that, whether that was ascertainable from public records." The trial court expressly did not find whether or not Cunningham was properly served in a separate capacity but decided the issue solely on the question of whether Cunningham had a separate interest in the property.

¶ 19     On December 16, 2020, appellants filed a motion to reconsider the denial of their cross-motion for summary judgment and partial grant of Tax Purchaser's motion for summary judgment. On February 23, 2021, following full briefing and argument by the parties, the trial court denied appellants' motion to reconsider. The court stated that it had reviewed the 2-1203 petition and that the petition to vacate "defines the basis for why the Court should vacate the

earlier order for deed." The court stated it reviewed the evidence on file and that it stands by its original decisions with regard to NSRR and the member-managers of Venture Management and the registered agent for one of the members. The court addressed appellants' argument that "once a party is named as an interested party, then they must be served; otherwise, the petition for tax deed should be denied." The court found that, in this case, appellants argued that Tax Purchaser made judicial admissions and that "the alleged judicial admission is in the application for tax deed, wherein the application on its face states that these are the parties that are or may be *** interested parties." The court found that statement in the application for tax deed did not qualify as a judicial admission.

¶ 20     On January 5, 2021, the trial court entered an order that found, in pertinent part, as follows: "CLARIFICATION: The Court's September 16, 2020 ruling granting in part and denying in part [Tax Purchaser's] Motion for Summary Judgment is clarified that the Court intended the only issues remaining to be whether Cunningham and [Venture Investments] were parties in possession or occupancy of the property."

¶ 21     On January 19, 2022, Tax Purchaser filed its motion for summary judgment and on January 20, 2022, appellants filed a cross-motion for summary judgment (the second motions for summary judgment). On June 2, 2022, following briefing by the parties, the trial court entered a written order granting Tax Purchaser's second motion for summary judgment and denying appellants' second cross-motion for summary judgment. The trial court stated appellants filed a petition to vacate the order for tax deed on the grounds the tax purchaser "failed to name and serve notice on certain interested parties" naming Cunningham, NSRR, Venture Investments, United Corporate Services (Venture Investment's registered agent), Adam Firsel, Chad Firsel, and Venture Management. The court found that to show that the court erred in issuing the order

for tax deed, appellants "must show that one or more of these parties, who admittedly were not properly served with notice, were 'owners, occupants, and parties interested in the property.' [Citation.]"

¶ 22    The trial court found that it was "uncontested that Venture was served properly with notice upon its registered agent via certified mail, at its registered corporate office in Chicago, and at its office in Morton Grove. Appellants argued Tax Purchaser failed to comply with the notice provisions of the Property Tax Code because the tax purchaser did not use NSRR, Venture's assumed name, nor did it serve all of the member-managers of Venture Management or Venture Investments. The court found that appellants' basis for alleging that Cunningham was an interested party was that Cunningham was an occupant of the property and had been named individually on municipal building code citations against the property, and the basis for arguing Venture Investments was entitled to separate notice was that it was an occupant of the property.

¶ 23    The trial court found that in ruling on the initial motions for summary judgment it rejected the premise that "all of the member-managers of a titleholder of a property are 'interested' parties entitled to service of notice by virtue of their interests in the entities that own the property." The court found that Venture was the only "owner" of the property and it was served via its registered agent. The court rejected appellants' (implicit) argument that "all of the people who ran or had an interest in Venture were required to be served due to their interest in the Property." The court found no evidence "any of them had an actual interest" in the property. "Instead, each owned an interest in an entity that had an interest in Venture, which in turn, owned the Property." Except, the court did find in ruling on the initial motions for summary judgment that a question of fact existed as to whether Cunningham or Venture Investments "were occupants of or in possession of the property separate from their interests in Venture." The

court noted the parties engaged in discovery and filed cross-motions for summary judgment after discovery.

¶ 24    The trial court, relying in part on appellants' characterizations in their second cross-motion for summary judgment, found:

> "Nothing in the facts developed during discovery show the 'interests' relied upon are separate from the ownership interest of Venture. In fact, [petitioners'] admission that whatever interests they had in the property were as 'agents' or 'under the authority' of Venture is conclusive. As 'agents' acting 'under the authority' of Venture, each of [Cunningham and Firsel] are the [*sic*] effectively Venture.
>
> They point to no facts to the contrary. [Cunningham] has no interest in the property separate from his interest in the entity that owned the property (Venture) or the entity that served as general contractor, Level Builders, LLC. He neither occupied nor possessed the property personally. As admitted, whatever actions he took with regard to the property were in his role as manager of [Venture Management] or as a contractor for Level Builders, LLC."

¶ 25    The trial court similarly found no evidence Venture Investments occupied the property. The court found that it was admitted that the property was vacant and under construction and thus "there was no 'occupant' other than the owner, Venture, through its agents." The court found there was no authority to support the argument that the Property Tax Code requires service on all members and managers of all property owners that are LLCs. The court found that none of the cases appellants cited require notice to any member of an LLC property owner other than its

- 11 -

registered agent. The court found it of no moment that Tax Purchaser attempted service on several members of Venture and Venture Management but failed.

¶ 26    The trial court held none of the parties appellants identified was required to be served and only if the tax purchaser failed to serve an owner, occupant, or interested party would the court be required to reconsider its order for the issuance of a tax deed. The court held that since none of the parties named by appellants was required to be served with notice, summary judgment on the petition to vacate order for tax deed was granted in favor of Tax Purchaser and that appellants' cross-motion for summary judgment on the petition to vacate was denied.

¶ 27    This appeal followed.

¶ 28                                    ANALYSIS

¶ 29    We must first dispose of appellants' motion to strike the statement of facts in Tax Purchasers' response brief. The motion to strike is denied. Appellants complain that Tax Purchaser asserted legal conclusions and arguments in its statement of facts, omitted facts contrary to its position, and mischaracterized evidence.

> " '[S]triking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review.' [Citation.] Because the violation is not so flagrant that we are unable to review the appeal, we have simply disregarded the inappropriate statements." *Rottman v. Illinois State Officers Electoral Board*, 2018 IL App (1st) 180234, ¶ 23.

¶ 30    We have found nothing in appellants' stated examples of improper elements of Tax Purchaser's response brief or in the brief itself that interfered with or precluded our review in this case. This court has conducted is own *de novo* review of the parties' arguments and relevant

facts. We have simply disregarded any misstatements of fact based on the record or inappropriate statements of law or argument. Appellants' motion to strike Tax Purchaser's statement of facts from its response brief is denied.

¶ 31    This is an appeal from a judgment on cross-motions for summary judgment. "A circuit court's ruling on cross-motions for summary judgment is reviewed *de novo*." *Better Government Ass'n v. City of Chicago*, 2020 IL App (1st) 190038, ¶ 9. When the parties file cross-motions for summary judgment they invite the court to resolve the litigation based solely on the record, agreeing that there is only a question of law involved. *Id*. Because our review is *de novo*, this court may affirm the trial court's judgment on any basis contained in the record, regardless of whether the trial court based its ruling on the same ground or the reasoning the trial court used. *Id*.

¶ 32    Summary judgment is appropriate, and should be affirmed in favor of the moving party (in this case, either of them on cross-motions) when the record, consisting of "the pleadings, depositions, and admissions on file, together with the affidavits, if any," show that there is no genuine issue as to any material fact and the prevailing party is entitled to a judgment as a matter of law. *Id*. We remain cognizant, however, that summary judgment "is a drastic means of disposing of litigation that should be granted only where the right of the moving party is clear and free from doubt." *Id*. (citing *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 15).

¶ 33    The purported "question of law" involved in this case is who is entitled to notice under the Property Tax Code (Code) (35 ILCS 200/1-1 *et seq*. (West 2020)) within the confines of a property tax sale. More specifically, the questions presented are 1) where a tax property sold for delinquent taxes is owned by an LLC, and the LLC owner is managed by an LLC, was the tax deed petitioner required by law to serve the individual member-managers of the managing LLC

with notices prior to obtaining a tax deed; and 2) whether taxes are due and payable when the tax bill is issued or on the due date in the tax bill. We agree we are presented with questions of law because they require us to construe certain provisions of the Code. "We review questions of statutory construction *de novo.*" *In re County Treasurer & ex officio County Collector of Cook County (Cook County Land Bank Authority v Capital Equity Land Trust #2140215 and Holdings Group, LLC)*, 2022 IL App (1st) 211511, ¶ 26 (citing *Oswald v. Hamer*, 2018 IL 122203, ¶ 9). More specifically, whether an action complies with the Code, particularly whether the notice given under the Code satisfied all the statutory requirements, is an issue of statutory construction raising a question of law. *Id*. ¶¶ 20, 26; *Oswald*, 2018 IL 122203, ¶ 9 ("Statutory construction presents questions of law that are appropriate for summary judgment.").

¶ 34    The Code requires certain notices connected with property tax sales like the one that occurred in this case. "Once property taxes become delinquent, [the Code] provides that the county collector may file an application in the circuit court for judgment and order of sale of the delinquent property." *In re Application of County Collector for Judgment, Sale Against Lands, Lots Returned Delinquent for Nonpayment of General Taxes &/or Special Assessments (Apex Tax Investments v. Lowe)*, 225 Ill. 2d 208, 212 (2007). To obtain a tax deed, the tax purchaser must deliver a notice, called the "Take Notice" to the County Clerk to be given to the party in whose name the taxes were last assessed. *Id*. (citing 35 ILCS 200/22-5 (West 1994)).

¶ 35    The Code also provides for a second "Take Notice" to be sent to the owners, occupants and parties interested in the delinquent property. *Id*. (citing 35 ILCS 200/22-10 (West 1994)). This "section 22-10 take notice must be served: personally by the sheriff; by registered or certified mail, return receipt requested; and by three publications in a newspaper." *Id*. (citing 35 ILCS 200/22-15, 22-20, 22-25 (West 1994)). The crux of appellants' argument in this case has

been that Tax Purchaser either failed to properly or failed to attempt to give notice pursuant to section 22-10 to all of the "parties interested in the delinquent property" as required by the Code; therefore, the order for the issuance of a tax deed is invalid and appellants are entitled to judgment as a matter of law. See *Capital Equity Land Trust #2140215 and Holdings Group, LLC*, 2022 IL App (1st) 211511, ¶ 20 ("The notice must contain every essential statutory element, and if it omits even one, the deed issued pursuant to that notice will be void."); *In re Application of County Collector for Judgment, Order of Sale Against Lands, Lots Returned Delinquent for Nonpayment of General Taxes for Year 2009 (Sodeman v. Rock Island County Collector)*, 2015 IL App (4th) 140810, ¶ 42 ("because petitioner failed to conduct a diligent inquiry and comply with the Code's notice requirements, he was not entitled to issuance of a tax deed").

¶ 36    Appellants also argued that Tax Purchaser failed to pay all of the taxes "due and payable" prior to the issuance of the tax deed, which is also a statutory requirement of the Code for the issuance of a tax deed. See *In re County Treasurer & Ex Officio County Collector (Community Enrichment Group, LLC v. Welch)*, 2017 IL App (4th) 170003, ¶ 39 ("To obtain a tax deed, plaintiff had to pay 'all taxes *** which became due and payable subsequent to the sale' and also redeem 'all forfeitures and sales which occur[red] subsequent to the sale.' [Citation.]").

¶ 37    As a preliminary matter, however, we first address appellants' arguments concerning the manner in which the trial court proceeded in this case. Appellants argue the trial court restricted its review of the cross-motions for summary judgment to the arguments appellants raised in their original petition to vacate the order for the issuance of a tax deed despite having entered an order that the cross-motion incorporated all prior arguments. The very few examples of the trial court allegedly ignoring some of appellants' arguments are ill defined and, in light of our findings

below, irrelevant. Appellants also argue that in deciding the cross-motions for summary judgement the trial court applied the wrong burden of proof. Without agreeing or disagreeing, the issue is moot on appeal because our review of the order granting summary judgment is *de novo*.

¶ 38    Next, we address appellants' argument that the order for the issuance of a tax deed must be vacated because Tax Purchaser failed to pay all of the taxes "due and payable" prior to the order for the issuance of a tax deed in violation of section 22-40 of the Code. The statute at issue reads, in pertinent part, as follows:

> "(a) If the redemption period expires and the property has not been
> redeemed and all taxes and special assessments which became *due and payable*
> subsequent to the sale have been paid *** and the notices required by law have
> been given *** the court shall so find and shall enter an order directing the county
> clerk on the production of the certificate of purchase and a certified copy of the
> order, to issue to the purchaser or his or her assignee a tax deed." 35 ILCS
> 200/22-40(a) (West 2020).

¶ 39    Here, the first installment 2019 tax bill was issued in January 2020, before the entry of the February 2020 order issuing a tax deed, and the records attached to the motion to vacate show a "due date" on the tax bill of March 1, 2020. Appellants argue the order for deed should be vacated because Tax Purchaser failed to pay the 2019 first installment taxes that arose after the tax purchase but before the issuance of the order for tax deed in February 2020. The issue is whether, under section 22-40, the 2019 first installment taxes on the subject property were both due and payable when the order for tax deed was entered in February 2020 and thus required to be paid by the tax purchaser before the issuance of a tax deed.

¶ 40    Appellants argue that the intent of section 22-40 is to remove any "unpaid subsequent year taxes on the property that *could have been paid* or were payable prior to the order." (Emphasis added.) This was so the tax purchaser would receive a "title free from any cloud that could affect the property's marketability." In other words, the legislature intended "to eliminate *all* outstanding taxes on the property when the order for tax deed issues." (Emphasis added.)

¶ 41    We find that under the Code, Tax Purchaser was not required to pay the first installment 2019 taxes prior to the issuance of the order to issue a tax deed because the taxes were not both due and payable. Appellants' argument requires this court to construe the language in a statute.

" 'The fundamental rule of statutory construction is to ascertain and effectuate the legislature's intent. [Citation.] The most reliable indicator of the legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, a court may not depart from the plain language by reading into the statute exceptions, limitations, or conditions that the legislature did not express.' [Citation.] All provisions of a statute are to be viewed as a whole, and each provision must be interpreted in light of other relevant sections of the statute. [Citation.] The construction of a statute is a question of law that is reviewed *de novo*. [Citation.]" *Village of Arlington Heights v. Pappas*, 2016 IL App (1st) 151802, ¶ 24.

¶ 42    The relevant language in the statute is the phrase "due and payable." The Code does not define either term. See 35 ILCS 200/1-3 *et seq*. (West 2020). Where a statute leaves a term undefined, "we may consult a dictionary to ascertain the plain and ordinary meaning of that term." *Kaider v. Hamos*, 2012 IL App (1st) 111109, ¶ 12. Further, "[t]he use of the conjunction

'and' suggests that the legislature intended that all of the listed conditions or requirements must be satisfied." *Trust Co. of Illinois v. Kenny*, 2019 IL App (1st) 172913, ¶ 35 (quoting *In re M.M.*, 2016 IL 119932, ¶ 21). "The word 'and' has been defined in our courts as meaning 'in addition to.' [Citation.] It is something in addition to or beyond that which has gone before." (Internal quotation marks omitted.) *In re M.M.*, 2016 IL 119932, ¶ 21.

¶ 43    First, we note that neither *Application of County Treasurer & Ex-Officio County Collector of Cook County (DRG,Inc. v. Follot)*, 20 Ill. App. 3d 291, 299 (1974), nor *Stanley v. Bank of Marion*, 23 Ill. 2d 414 (1961), relied upon by appellants, is helpful to them. In *Follot*, the court wrote: "Before issuance of a tax deed, all subsequent taxes must be paid. (Ill.Rev.Stat.1969, ch. 120, par. 747.)." *Follot*, 20 Ill. App. 3d at 299. In *Stanley*, our supreme court held, with regard to taxes subsequent to a tax sale, that "[i]t is not mandatory that the certificate holder pay such taxes; rather, it is necessary only that they be paid prior to the issuance of deed." *Stanley*, 23 Ill. 2d at 419. In that case, the property owner prior to the tax sale continued to pay the taxes on the property after the delinquent tax year. *Id*. at 415-16.

¶ 44    Neither *Follot* nor *Stanley* involve a tax sale in which taxes were levied after the tax purchaser obtained a certificate of purchase but were not yet required to be paid—although they could be—before the court issued an order for the issuance of a tax deed. See *id*. Rather, the two sets of tax levied in *Follot* had both been the subject of a tax sale (*Follot*, 20 Ill. App. 3d at 299); and in *Stanley*, the issue was the consequence, if any, of who paid the subsequent taxes, not that the subsequent taxes were not paid (*Stanley*, 23 Ill. 2d at 419). We find appellants' reliance on these cases is misplaced.

¶ 45    Returning to the language of the statute, the dictionary defines "due" as "owed or owing as a debt." https://www.merriam-webster.com/dictionary/due (visited May 31, 2023). The

- 18 -

dictionary defines "payable" as "that may, can, or must be paid." https://www.merriam-webster.com/dictionary/payable (visited May 31, 2023). We concede that the plain meaning of the statute admits of defining "payable" such that the 2019 first installment taxes were "payable" before the trial court issued an order for the issuance of a tax deed. The first installment was a tax that *could* be paid. *Id*. However, under the plain meaning of the statute the first installment was not "due."

¶ 46    When the trial court issued the order for the issuance of a tax deed the first installment taxes were not "owed as a debt." https://www.merriam-webster.com/dictionary/due (visited May 31, 2023). We recognize that the taxes create a lien on the property beginning when they are issued. 35 ILCS 200/21-75 (West 2020) ("The taxes upon property, together with all penalties, interests and costs that may accrue thereon, shall be a prior and first lien on the property, superior to all other liens and encumbrances, from and including the first day of January in the year in which the taxes are levied until the taxes are paid or until the property is sold under this Code."). However, by statute, the first installment taxes did not have to be paid until March 1, 2019: "Except as otherwise provided in this Section or Section 21-40, all property upon which the first installment of taxes remains unpaid on the later of (i) June 1 or (ii) *the day after the date specified on the real estate tax bill as the first installment **due date** annually shall be deemed delinquent." (Emphases added.) 35 ILCS 200/21-15 (West 2020). The record in this case clearly established the first installment due date as March 1, 2019.

¶ 47    Under our rules of statutory construction, we find the legislature intended that all of the listed conditions in section 22-40 must be satisfied. *Kenny*, 2019 IL App (1st) 172913, ¶ 35, *In re M.M.*, 2016 IL 119932, ¶ 21. That means, Tax Purchaser was required to pay the subsequent taxes that were both "due" and "payable." The first installment taxes may have been "payable"

when the trial court issued its order for the issuance of a tax deed but they were not "due" because the first installment due date was March 1, 2019, as stated in the tax records. We find as a matter of law that when taxes are levied subsequent to a tax sale, those taxes are not both "due and payable" until the due date stated on the tax bill. Because the taxes at issue were not "due *and* payable" appellants' argument fails. The trial court properly granted summary judgment in favor of Tax Purchaser and against appellants on this claim.

¶ 48     We now turn to the issue of notices. The notice provisions in the Code are rigidly enforced. *Capital Equity Land Trust #2140215 and Holdings Group, LLC*, 2022 IL App (1st) 211511, ¶ 20. "The tax buyer must strictly comply with the statutory notice requirements without regard to whether any owner *** was misled by the defective notice; the courts presume prejudice to the owner." *Id.* "[U]nder Illinois law, a tax deed petitioner must exercise due diligence to locate and notify parties interested in the property. [Citation.] [T]he Code's requirements are mandatory, and satisfaction of the requirements is a condition precedent to the proper issuance of a tax deed." *Id*. ¶ 38. We agree that if Tax Purchaser failed to provide the notice required by the Code to any interested party, the order for the issuance of a tax deed is erroneous and appellants are entitled to judgment as a matter of law.

¶ 49     On appeal, in support of their argument Tax Purchaser failed to give the required notice to all "parties interested in the property" (35 ILCS 200/22-10 (West 2020)), appellants argue that (1) the Code requires separate service on Cunningham as a "person interested in the property" separate from his capacity as owner of Venture based on "the Village of Niles citations posted on the property in [Cunningham's] name individually and as [a] defendant[] named individually in the [separate] mechanics lien cases [against the property,]" (2) Tax Purchaser's judicial admissions that Cunningham was an interested party, which were also based on the citations and

mechanics lien cases, and (3) because "[a]t all times, [Cunningham was watching, maintaining, and repairing the property" (based on "the specific grant of authorization by Venture for [Cunningham] to perform particular acts on and at the property while maintaining possession and control of the property as agent for Venture"). Tax Purchaser failed to provide separate notice to Cunningham.

¶ 50    Appellants also argue that Adam, Chad, and NSRR are interested parties to which Tax Purchaser failed to provide notice, and Mike Firsel is an interested party to whom Tax Purchaser failed to provide notice.

¶ 51    For the reasons that follow, we find that the bases for Cunningham's alleged individual interest in the property—the citations, being named a defendant in mechanics lien cases, and maintaining the property—do not make Cunningham an "interested person" in the property under the facts of this case; consequently, Cunningham was not entitled to the service of notice required by the Code separately from his capacity as an owner of Venture or member-manager of Venture Management; therefore, the trial court's order granting Tax Purchaser's motion for summary judgment and denying appellants' motion for summary judgment is correct. *Capital Equity Land Trust #2140215 and Holdings Group, LLC*, 2022 IL App (1st) 211511, ¶ 20, *In re Application of the County Collector for Judgment and Order of Sale (Gupta v. Eldridge, Jr.*, 2015 IL App (4th) 140810, ¶ 46.

¶ 52    On the issue of the notices provided in this case, there are two questions raised by appellants' argument regarding Cunningham. The first is whether he has a separate interest in the property that would entitle him to notice under the Code based on the citations, being named a defendant in mechanics lien cases, and maintaining the property. There is no factual dispute that the City of Niles cited Cunningham individually or that the plaintiffs in the mechanics lien cases

sued Cunningham individually. Therefore, to resolve this issue, we must answer the question of law of whether the facts place Cunningham within the meaning of "interested party" under the Code. For the reasons that follow, we find they do not; therefore, have no need to reach, and expressly offer no opinion on, the second question, which is whether, assuming Cunningham had a separate interest in the property, the notice Cunningham received through his interest in Venture is sufficient. *CGE Ford Heights, L.L.C. v. Miller*, 306 Ill. App. 3d 431, 441 (1999) ("A court should not decide a case where the judgment would have an advisory effect. [Citation.] *** We will not render advisory opinions or decide cases merely to establish precedent.").

¶ 53    This court has found:

> "[A] party who has certain rights under the Code is an interested party entitled to notice, even where those rights do not include the right to redeem. [Citation.] The Code defines 'nonownership interest' as 'any interest in *real property* other than a contingent interest and other than an ownership interest as defined in this Section, including without limitation a mortgage, equitable mortgage or other interest in the nature of a mortgage, leasehold, easement, or lien.' 35 ILCS 200/21-285 (West 2018). Additionally, this court has defined 'recorded interest' to mean an interest that can be inferred from public records, while distinguishing other recorded interests from recorded ownership. [Citations.]" (Emphasis added.) *Capital Equity Land Trust #2140215 and Holdings Group, LLC*, 2022 IL App (1st) 211511, ¶ 39.

¶ 54    Although persons with "any interest," not just an ownership interest, in the property are entitled to notice under the Code, we find the Code's definition of "nonownership interest" limits the scope of that phrase. "In construing a statute, we must give effect to the intention of the

legislature 'so that each word, clause, or sentence is given reasonable meaning and not deemed superfluous or void.' [Citation.]" *Kankakee County Board of Review v. Property Tax Appeal Board*, 226 Ill. 2d 36, 51-52 (2007). Consistent with this rule, we make our determination by construing on the term "interest." In other words, the question we ask is what types of "interests" are such that a party is a "party interested in the property" within the meaning of the Code.

¶ 55     We believe the interests contemplated by the Code are limited to interests that affect the res—ownership, possession, use, or disposition of the property itself—such as a lien on the property. See *Capital Equity Land Trust #2140215 and Holdings Group, LLC*, 2022 IL App (1st) 211511, ¶ 42 ("Our supreme court has previously determined that those without interests or liens are not 'interested in the real estate' within the meaning of the provisions requiring personal notice in tax deed proceedings. See *In re Estate of English*, 24 Ill. 2d 357, 358-59 (1962) (administrator and creditors of a decedent are not interested persons for purposes of the tax deed provisions).").

¶ 56     In *Capital Equity Land Trust #2140215 and Holdings Group, LLC*, our colleagues on this court found as follows:

> "Our research indicates that the designation of 'interested parties' for purposes of determining whether notice was required under the Code has been previously applied to the following: subsequent tax certificate purchasers of property (*In re Application of the County Collector*, 391 Ill. App. 3d 656, 662 (2009)); mortgagees and mortgage servicers of property (*Glohry*, 2011 IL App (1st) 101966, ¶¶ 49-52); heirs to property by virtue of a will and probate proceedings (*Muskat*, 403 Ill. App. 3d at 991); and land trust beneficiaries whose names were ascertainable from the public records (*In re Application of the County*

*Treasurer & ex officio County Collector of Cook County for Order of Judgment &*

*Sale Against Real Estate Returned Delinquent for the Year 1985*, 216 Ill. App. 3d

162, 171 (1991)); and contract purchasers of property (*In re Application of the*

*Cook County Treasurer*, 185 Ill. 2d 428, 437 (1998)).” *Capital Equity Land Trust*

*#2140215 and Holdings Group, LLC*, 2022 IL App (1st) 211511, ¶ 41.

¶ 57     In each instance, the allegedly “interested party” possessed rights regarding the property

and not just rights or liabilities arising from or related to the property. For example, in *In re*

*Application of County Collector (Scott v. Sackor)*, 391 Ill. App. 3d at 657-58, Scott’s predecessor

in interest purchased tax certificates for tax years 2000 and 2001 and subsequently Sackor

purchased tax certificates for the same property for tax years 2002 and 2003. *Scott*, 391 Ill. App.

3d at 657-58. The issue was whether Sackor, a subsequent tax certificate holder, was entitled to

notice pursuant to section 22-10. *Id*. at 660. The court held that “a subsequent tax certificate

purchaser does not have a redeemable interest in the property, but does \*\*\* have some rights

with regard to the property and can take certain steps to protect those rights. As a result, a

subsequent tax purchaser is a party ‘interested in the property’ and is entitled to notice pursuant

to section 22–10 of the Property Tax Code.” *Scott*, 391 Ill. App. 3d at 662.

¶ 58     In reaching the conclusion that a subsequent tax certificate purchaser was entitled to

notice, this court noted that although a tax certificate “does not pass title to the purchaser until

the redemption period has passed,” the purchase of a tax certificate “does confer some rights

upon the buyer.” *Id*. at 660. Each such right this court relied upon relates to disposition of the

property, including “appointment of a receiver to prevent waste on the property,” requesting the

court declare a sale to be in error, requesting the court to expunge a redemption, and the right to

redeem subsequent tax years and proceed to a tax deed "if the redemption period expires and the property has not been redeemed." *Id*. at 660-61 (and cases cited therein).

¶ 59    Simultaneously, the *Scott* court also cited *In re Estate of English*, in which a decedent owned the property, the property became part of the decedent's estate, and subsequently a tax purchaser purchased the property at a tax sale. *In re Estate of English*, 24 Ill. 2d at 357-58. The petitioners alleged the tax purchaser failed to give notice to the administrator or the "creditors who had filed claims against the estate, that such creditors were necessary parties to the proceedings, and that since they were not made parties the deed was void." *Id*. at 358. Our supreme court rejected the petitioners' argument, finding first that an administrator takes no interest in the land of the decedent, "except a naked power to sell in case the personal estate is insufficient to pay debts, and second, that neither an administrator nor a creditor whose claim has been allowed holds a lien upon the land." *Id*. at 358-59. The court held that such persons "are not 'interested in the real estate,' within the meaning of the provisions requiring personal notice in tax-deed proceedings." *Id*. at 359.

¶ 60    Similarly, in *In re County Treasurer & ex officio County Collector of Lake County (Glen Investments v. Muskat)*, 403 Ill. App. 3d 985, 990 (2010), the issue was whether "whether a devisee of real property under a will in probate has an interest in the real property sufficient to mandate notice under section 22-10 of the Code." *Id*. at 990. The court held the devisee was entitled to notice because it was "clear that a devisee has certain other rights to the property." *Id.* Those rights included the right to redeem the property and, most importantly, "rights of ownership." *Id*. at 991.

¶ 61    In *Application of County Treasurer (Huffman v. Davis)*, 216 Ill. App. 3d 162, 170 (1991), this court rejected the argument that land trust beneficiaries were not entitled to notice because

they were not "interested parties *such as mortgagees or note holders* of record." (Emphasis added.) *Id.* at 170. The court held that "even if respondents' interest as land trust beneficiaries was personal rather than real, under the circumstances of this case, due process required that they be notified personally or by certified mail of the pendency of the tax deed proceedings." *Id.* at 172. The court relied, in part, on our supreme court's holding that "the land trust beneficiary, rather than the trustee, is the owner of real estate for taxation purposes, language to the contrary in the trust agreement notwithstanding" (*id.* at 172), and an amendment to the Code recognizing that land trust beneficiaries are persons interested in the real estate (*id.* at 173 (citing *In re Application of County Treasurer of DuPage County (Spackman v. Overtaon)*, 16 Ill. App. 3d 385 (1974))).

¶ 62   In *In re Application of County Treasurer & Ex Officio County Collector of Cook County, Ill. (Glohry, LLC v. OneWest Bank)*, 2011 IL App (1st) 101966, ¶ 49, the interested parties were mortgage note holders and servicers. It is well known that "[a] mortgage *** vests in the party secured a lien upon the mortgaged premises. By virtue of that lien the mortgagee is entitled to have the mortgaged property sold under a decree of foreclosure and the proceeds of the sale applied to the payment of the debt secured." (Internal quotation marks and citation omitted.) *Application of Rosewell*, 127 Ill. 2d 404, 411 (1989). Regarding the mortgage servicer in *Glohry*, this court found that it had "all the rights, responsibilities and duties as that of the true holder of the [mortgage] note, *** including the right to redeem." *Id.* ¶ 49. Thus, it clearly had an interest in the property. *Id.*

¶ 63   Finally, our supreme court held that a contract purchaser is entitled to notice under the Code, reasoning that a contract purchaser "has a redeemable interest in the property because he signed a contract to purchase the property. Unlike an owner of record title who has neither an

equitable nor a legal interest in the property, a contract purchaser has an equitable interest in the property which gives him a right to redeem." *In re Cook County Treasurer (Loop Mortgage Corp. v. Williams)*, 185 Ill. 2d 428, 437 (1998).

¶ 64    In each circumstance noted above, the "interest" of the alleged "interested party" was an interest in ownership, possession, or disposition of the res itself. In none of those circumstances was the "interest" of the alleged "interested party" an existing or potential liability or asset involving the res. We believe the "interest" required by the Code is an interest in the res, including the ultimate disposition of the land, and that personal interests related to the land, including liabilities tied to the property, are not an "interest" within the meaning of the Code. See *Application of County Treasurer & Ex-Officio County Collector of Cook County (Winnetka Investment Co. v. Fried)*, 113 Ill. App. 2d 50, 56-57 (1969) (holding the "legal consequences of the Illinois land trust do not provide the beneficiary with an interest that is entitled to notice in the proceedings now before us" based, in part, on language of the trust agreement that recited that no beneficiary now has, or shall thereafter at any time have, any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds) (superseded by statute, *supra* ¶ 61); but see *Huffman*, 216 Ill. App. 3d at 172 (noting our supreme court in *Home Federal Savings and Loan Association of Chicago v. Zarkin*, 89 Ill. 2d 232 (1982), "recognized the characterization of a land trust beneficiary's interest as personal rather than real property as 'paradoxical.' [Citation.]").

¶ 65    Our interpretation of the statue is also consistent with the purpose of the Code and the notice provisions in the Code. The purpose of the Code is not to protect the ability to collect a fine or a debt. The notice provisions contained in sections 22-10 through 22-25 are designed to benefit citizens and to protect their property from sacrifice. *Equity One Investment Fund*, 2013

IL App (1st) 130463, ¶ 10. When construing a statute "we may properly consider the statute's purpose, the problems it targets, and the goals it seeks to achieve." *In re Objections to Tax Levies of Freeport School District No. 145*, 372 Ill. App. 3d 562, 580 (2007). The specific purpose of the post-sale notice is to assist property owners to redeem their property before interest accumulates, by giving early notice and additional time for the owners to make arrangements to preserve their "property rights." *In re Application of Skidmore*, 2018 IL App (2d) 170369, ¶ 14. We believe appellants' arguments to be out of line with the purpose of the Code.

¶ 66     First, we note appellants make only a passing reference to Cunningham's maintenance, which we construe to allegedly give rise to his claimed "occupancy," of the property. Regardless, "occupancy" means "the fact or condition of holding, possessing, or residing in or on something." https://www.merriam-webster.com/dictionary/occupancy (visited June 1, 2023). Nothing suggests that Cunningham's presence on the property, his actual or constructive possession of the property, or his mere maintenance of the property created in him any rights not derived from his ownership interest through Venture or through Venture Management. Moreover, nothing suggests that Cunningham's maintenance did not arise from his ownership of the property through Venture, as a member-manager of Venture Management, or perhaps his involvement with a general contractor on the property, none of which, based on our definition of "interest," would entitle Cunningham to separate individual notice under the Code.

¶ 67     Second, we find that Tax Purchaser did not make a judicial admission that Cunningham was a "person interested in the property" under the notice provision in the Code. "A judicial admission is a deliberate, clear, unequivocal statement by a party concerning a concrete fact within that party's knowledge." *Erie Insurance Exchange v. Aral Construction Corp.*, 2022 IL App (1st) 210628, ¶ 37 (citing *1550 MP Road LLC v. Teamsters Local Union No. 700*, 2019 IL

123046, ¶ 37). "It is well established that legal issues cannot be judicially admitted and, instead, are questions for the court to decide." *1550 MP Road LLC*, 2019 IL 123046, ¶ 37. In this case, the facts are undisputed, and whether Cunningham is a "person interested in the property" under the Code on the grounds appellants assert is a legal issue that presents a question for the court. Moreover, the statement in the application for tax deed that Adam, Chad, and NSRR may or may not be interested parties is not an unequivocal statement and does not meet the definition of a judicial admission.

¶ 68    Third, we find that Cunningham's purported interest as the recipient of a citation on the property or as a personal defendant in mechanics lien cases is not related to Cunningham's individual property rights regarding the property (it has not been established that he has any). They constitute potential personal liabilities based on the property. See, *e.g.*, § 9:4. Sanctions— Fines, 3 Subdivision Law and Growth Mgmt. § 9:4 (2d ed.) ("Unlike criminal fines, statutory civil penalties for violation of local land use ordinance are corrective, not punitive, in nature. Purpose of statutory civil penalties for violation of local land use ordinance is to compel compliance with the law prospectively, not to punish past behavior. A person subject to statutory civil penalties for violation of local land use ordinance has the prerogative to immediately prevent the accumulation of the penalties by simply complying with the ordinance."); *Swords v. Risser*, 55 Ill. App. 3d 676, 678 (1977) ("The [mechanics] lien attaches to the property and not to the owner. While there is a statutory provision for a deficiency judgment against the defendant should a sale upon foreclosure not yield enough to satisfy the amount of the lien, a deficiency necessarily requires a sale. [Citations.] There was no sale in this case and there could have been no deficiency.")

¶ 69 Furthermore, in *Capital Equity Land Trust #2140215 and Holdings Group, LLC*, 2022 IL App (1st) 211511, ¶ 40, the issue was whether the municipality, which had filed suit against the property owners for building code violations at the property, was an interested party entitled to notice. This court found that the municipality was not entitled to notice because "there was no judgment entered in the case *that would serve as a lien attached to the property* that would entitle the city to notice under section 22-10." (Emphasis added.) *Id.* In arriving at that conclusion, this court noted that it had found no caselaw "that suggests that a municipality with a pending action for building code violations against owners of real property takes an interest in the property prior to the entry of a judgment lien against the property." *Id.* ¶ 42. We find that this holding applies with equal force to any party to a pending action for building code violations. Therefore, appellants' argument that the fact the municipality named Cunningham individually in its citations does not itself make Cunningham an interested party in the tax sale proceedings.

¶ 70 Also instructive is *Winter Park Devil's Thumb Investment Co. v. BMS Partnership*, 926 P.2d 1253, 1255 (Colo. 1996). In that case, the limited partners asserted that they possessed a right to redeem real property owned by the partnership and that the right to redeem constitutes a sufficient interest to trigger notice requirements similar to Illinois's notice requirements. The Supreme Court of Colorado examined the extent of the limited partners' interest and noted that "[a] limited partner's interest in the partnership is personal property" and "limited partners only possess an interest in the partnership entity and do not have any legal or equitable right to partnership property." (Internal quotation marks omitted.) *Winter Park Devil's Thumb Investment Co.*, 926 P.2d at 1256. The Supreme Court of Colorado held that the limited partners did not have any interest in the real property of the partnership that entitled them to a right of redemption and, consequently, the right to notice. The Supreme Court of Colorado reasoned that "the limited

partners' interest in the partnership was personal, concerned the partnership entity only, and did not amount to any right over the partnership property." *Id*.

¶ 71    In Illinois, under the Limited Liability Company Act, "[a] member is not a co-owner of, and has no transferable interest in, property of a limited liability company" and "[a] distributional interest in a limited liability company is personal property." 805 ILCS 180/30-1 (West 2020); see also 805 ILCS 180/5-1 (West 2020) ("(c) A limited liability company is a legal entity distinct from its members"). See also 805 ILCS 180/10-10 (West 2020) ("(a) Except as otherwise provided in subsection (d) of this Section, the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager.").

¶ 72    We believe the reasoning of the Supreme Court of Colorado is applicable in Illinois and reach a similar result. We find that under the undisputed facts of this case Cunningham individually is not a person interested in the property. "Any process, notice, or demand required or permitted by law to be served upon either a limited liability company or foreign limited liability company shall be served either upon the registered agent appointed by the limited liability company or upon the Secretary of State as provided in this Section." 805 ILCS 180/1-50 (West 2020). Because Tax Purchaser served Venture's and Venture Management's registered agent, Tax Purchaser is entitled to judgment as a matter of law on this claim.

¶ 73    Next, we address appellants' argument that Adam, Chad, and NSRR are interested parties to which the Tax Purchaser failed to provide notice, and Mike Firsel is an interested party to whom Tax Purchaser failed to provide notice. In support of arguing Adam, Chad, and NSRR are

interested persons under the Code, appellants argue that Adam, Chad, and NSSR had an interest—separate from Venture—in the property by virtue of managing and caretaking the property and, as to Adam and James, as owners of Venture. Appellants further argue those people and entity have a separate interest in the property because Tax Purchaser "identified" them as such and listed them in the application for a tax deed.

¶ 74    In the application for tax deed, Tax Purchaser listed the names of individuals and entities it stated are "or may be an interested party." We find Tax Purchaser did not make a judicial admission that Adam, Chad, and NSRR are interested parties by virtue of their inclusion on the list of names of those who are or may be an interested party. Judicial admissions are defined as "deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *Smith v. Pavlovich,* 394 Ill. App. 3d 458, 468 (2009). A statement is not a judicial admission if it is a matter of opinion, estimate, appearance, inference, or uncertain summary. *Id.* "Although trial courts may allow informed opinions on ultimate issues, this does not mean that a statement of legal conclusion must be allowed as an admission. What constitutes an admission is determined on a case-by-case basis." *Fortae v. Holland*, 334 Ill. App. 3d 705, 714 (2002). The statement in the application filed in this case that Adam, Chad, and NSRR are or may be interested parties is not an unequivocal statement that would qualify as a judicial admission.

¶ 75    When the court interprets a statute and applies the interpreted statute to undisputed facts, a question of law is presented that this court considers *de novo. Central Illinois Light Co. v. Illinois Dept. of Revenue*, 335 Ill. App. 3d 412, 415 (2002). The parties agree that on cross-motions for summary judgment, they invite the court to resolve the litigation based solely on the record and agree that there is only a question of law involved. *Better Government Ass'n*, 2020 IL App (1st) 190038, ¶ 9.

¶ 76    In this case, the determination of whether Adam, Chad, and NSRR are "parties interested in the property" under the Code requires the application of undisputed facts to the legal standard for interested parties under the Code. This is a question of law not subject to judicial admission by a party. *1550 MP Road LLC*, 2019 IL 123046, ¶ 37; *Quad Capital Portfolio A LLC v. AbbVie, Inc.*, 2022 IL App (1st) 200872, ¶ 22 (questions of fact may become questions of law "if the crucial facts are undisputed and only one conclusion can be drawn from the undisputed facts."). The pertinent facts are undisputed and this court must draw its conclusion by applying those facts to a legal standard. We find as a matter of law Tax Purchaser did not make a judicial admission regarding interested parties. *Id*.

¶ 77    Next, regarding NSRR, under the Limited Liability Act, a limited liability company "may elect to adopt an assumed name." 805 ILCS 180/1-20 (West 2020). Nothing in the Limited Liability Act provides that adopting an assumed name results in the creation of an independent entity. "(a) Any process, notice, or demand required or permitted by law to be served upon either a limited liability company or foreign limited liability company shall be served either upon the registered agent appointed by the limited liability company or upon the Secretary of State as provided in this Section." 805 ILCS 180/1-50 (West 2020). Furthermore, the court has held that "[w]here the facts indicate that one corporation so controls the affairs of another corporation that the two entities are essentially one, the court will disregard the corporate entities and hold service of process on one corporation effective as to the other. *Slates v. International House of Pancakes, Inc.*, 90 Ill. App. 3d 716, 725 (1980) (citing *Rymal v. Ulbeco, Inc.*, 33 Ill. App. 3d 799 (1975)).

¶ 78    On appeal, appellants state that Venture Management was "doing business as" NSRR. We construe NSRR as an assumed name. Appellants have directed us to no evidence of a

separate legal entity known as NSRR or "North Shore Rifle Range." Service on the registered agent was proper.

¶ 79    Next, we find that Adam, Chad, and NSRR are not entitled to separate individual notice under the Code based on managing the property or as managers of Venture Management. Tax Purchaser argues that appellants acknowledge that the possessory rights appellants allege, which appellants argue entitles them to separate notice of the expiration of the period of redemption, flow directly and arise from their interest in Venture Management. Tax Purchaser argues there is no dispute Tax Purchaser served Venture Management as required by the Code and was not required to serve "parties who wear multiple 'hats' *** with notice independently or labeled [separately]." Tax Purchaser asserts, without citation to authority, that the "Code has no such requirement nor does any case law suggest such an expansive interpretation of the statute related to notice." Nonetheless, we agree with Tax Purchaser that the undisputed facts do not create a right in the named individuals and entities to their own individual notice where the facts allegedly giving rise to a right to notice all derive from Venture or Venture Management and there is no dispute of fact Tax Purchaser served those entities.

¶ 80    In *Fried*, 113 Ill. App. 2d at 56-57 (abrogated by statute), the court found that land trust beneficiaries are not interested persons entitled to notice in tax-deed proceedings. To determine whether beneficiaries of a land trust are entitled to notice in a tax proceeding the *Fried* court considered the "character" of an Illinois land trust (*id*. at 52) but the court then went on to discuss the nature of the land trust beneficiaries' interest in the subject property (see *id*. at 52-53). The court found that "in an Illinois land trust, the trustee has both legal and equitable title," that "[o]nly the land trustee and not the beneficiary can accept an offer to purchase the real estate," "the trustee and not the beneficiary is the proper party to bring a forcible detainer

action," and "the beneficiary of a land trust is not a necessary party in a suit to condemn property." *Id*. at 53.

¶ 81    The *Fried* court compared the land trust beneficiaries' interests against other alleged "parties interested in real estate." *Id*. at 54. The *Fried* court noted that the administrator and the creditors of a decedent's estate were *not* " 'interested in the real estate,' within the meaning of the provisions requiring personal notice in tax-deed proceedings" because "[a]n administrator takes no interest in the land of decedent, except a naked power to sell in case the personal estate is insufficient to pay debts, and neither he nor a creditor whose claim has been allowed holds a lien upon the land." (Internal quotation marks omitted.) *Id*. at 54.

¶ 82    The *Fried* court rejected the argument that the land trust beneficiaries in that case were interested persons because under the terms of their trust agreement "title to the property is taken by the trustee 'for the ultimate use and benefit of the beneficiaries who retain the power of direction to deal with the title to the property and receive the proceeds of sales, mortgages, rentals and the like" and because "the beneficiaries here retain the 'management and control of the renting, handling, encumbering, selling or making any other disposition of the property' and [] the trustee has no duties in regard to the payment of taxes." *Id*. at 56. The *Fried* court rejected that argument because the trust agreement also recited that "it is the intention of all the parties thereto that full legal and equitable title vest in the trustee and in event of a beneficiary's death, the interest shall pass to the executor or administrator and not to heirs-at-law [and] no beneficiary now has, or shall thereafter at any time have, any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds." *Id*. at 56-57. Ultimately, the court held "[t]he legal consequences of the

Illinois land trust do not provide the beneficiary with an interest that is entitled to notice in the proceedings now before us." *Id*. at 57.

¶ 83     This court has recognized that our supreme court abrogated the *Fried* court's judgment. In *Huffman*, 216 Ill. App. 3d at 172, this court noted that our supreme court in *Zarkin*, 89 Ill. 2d 232, "recognized the characterization of a land trust beneficiary's interest as personal rather than real property as 'paradoxical.' [Citation.]". Further, the *Huffman* court also recognized that an amendment to the Code "recognized land trust beneficiaries [as] 'persons interested in the real estate.' " *Huffman*, 216 Ill. App. 3d at 173. The *Huffman* court also held that "even if [the land trust beneficiaries'] interest as land trust beneficiaries was personal rather than real under the circumstances of this case, due process required that they be notified personally or by certified mail of the pendency of the tax deed proceedings." *Huffman*, 216 Ill. App. 3d at 172. We also note that land trust beneficiaries have a right to redeem from the tax sale by disclosing their interest of record (*id*. at 171) and "the land trust beneficiary, rather than the trustee, is the owner of real estate for taxation purposes (*id*. at 172).

¶ 84     However, in Illinois, under the Limited Liability Company Act, "the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager." 805 ILCS 180/10-10 (West 2020). "A member is not a co-owner of, and has no transferable interest in, property of a limited liability company" and "[a] distributional interest in a limited liability company is personal property." 805 ILCS 180/30-1 (West 2020). See also 805 ILCS 180/5-1 (West 2020) ("(c) A limited liability company is a legal entity distinct from its members").

¶ 85    The individual managers of Venture Management are not interested parties for purposes of the notice provisions in the Code. *Zarkin* and *Huffman* notwithstanding, we believe the *Fried* court's reasoning still applies to the determination of whether a party is entitled to notice in a tax proceeding and we have adopted a similar approach in this case. Accord *First Lien Co. v. Marquette National Bank of Chicago*, 56 Ill. 2d 132, 135-36 (1973). This court and the General Assembly have determined that land trust beneficiaries are interested parties in real estate subject to tax-deed proceedings based on the specific nature of a land trust. We find that the nature of a land trust and a land trust beneficiaries' interest in the property distinguish them from the essential characteristics the *Fried* court relied upon, which were a lack of control or interest in the res and only a personal property interest in proceeds from the res. See *Fried*, 113 Ill. App. 2d at 56-57 ("no beneficiary now has, or shall thereafter at any time have, any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds."). Additionally, the members of an LLC are not co-owners of, and have no transferable interest in, the property of a limited liability company and their distributional interest is personal property.  805 ILCS 180/30-1 (West 2020).

¶ 86    We now hold that an "interest" in the subject property for purposes of the notice provisions in the Code means an interest in the res and not in the assets or liabilities arising from the property. An interest in the res is in the nature of ownership or a lien. Appellants lacked such an interest and were not entitled to separate notice.

¶ 87    We find that any interest Adam and Chad had in the property was the interest of Venture and/or derivative of their interest in Venture and Venture Management, and service was proper. We also find as a matter of law that their interests were limited and did not entitle them to separate notice of the tax-deed proceedings under the Tax Code. Accordingly, the trial court's

judgment granting summary judgment in favor of Tax Purchaser and denying appellants' motion for summary judgment was proper.

¶ 88    Finally, appellants assert "Mike Firsel was an interested party entitled to notice." However, reading appellants' assertion in context of its entire argument concerning Firsel, appellants are in fact arguing that if Tax Purchaser had made a diligent inquiry to identify the interested parties it would have properly served Adam, Cunningham, and James because it would have identified Firsel as their attorney. We do not glean any reasonable argument by appellants that Firsel has a separate interest in the property because he is the attorney for the members of the LLC that managed the property.

>"A case becomes moot where the issues raised in and decided by the trial court no longer exist because events have occurred since filing of the appeal which make it impossible for the reviewing court to render effectual relief. [Citation.] Where a decision reached on the merits cannot result in appropriate relief to the prevailing party, the court has, in effect, rendered an advisory opinion. [Citation.] We do not review cases merely to guide future litigation or to set precedent. [Citation.]" *Balmoral Racing Club, Inc. v. Illinois Racing Board*, 151 Ill. 2d 367, 387 (1992).

¶ 89    Appellants' argument that Firsel could have been discovered as the member-managers' attorney and therefore Tax Purchaser was not diligent in its inquiry is rendered moot by our decision that the managers themselves were not entitled to separate notice—based on our analysis, the argument regarding Firsel is of no moment. Therefore, we decline to reach this argument. *Id*.

¶ 90                                   CONCLUSION

¶ 91    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 92    Affirmed.